**SHRANKO, d. b. a. ERNIE'S BAR, Appellant, v. BOARD OF LIQUOR CONTROL, Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 4907. Decided October 16, 1953.

Isadore Topper, Columbus, Wasserman, Stillman & Fink, Adrian B. Fink, Jr., of Counsel, Cleveland, for appellant.

Hon. C. William O'Neill, Atty. Genl., Ralph N. Mahaffey, Robert B. Rady, Asst. Attys. Genl., Columbus, for appellee.

## OPINION

By THE COURT.

This is an appeal on questions of law from a judgment of the Common Pleas Court affirming an order of the Board of Liquor Control which had affirmed an order of the Department of Liquor Control revoking Class D-1, D-2 and D-3 permits of appellant.

The citation against the appellant was that she had sold intoxicating liquor, namely beer, in violation of the provisions of §6064-22 GC. The finding was that,

"on June 30, 1951, the permit holder and/or her agent, or employer, sold and furnished, on the said permit premises, beer, to persons who were then and there intoxicated, to wit; Joseph Bokar, William Finnerty and Frank Vuytich, which sales were in violation of the provisions of the Ohio Liquor Control Act."

The errors assigned are that the finding of the Court of Common Pleas is against the manifest weight of the evidence and is contrary to law and that the order of revocation is not supported by reliable, probative and substantial evidence on the whole record and is not in accordance with law.

At the outset, we hold that there is no support in the record for the finding of a sale of beer to Joseph Bokar. There is also a supplemental charge that permittee sold intoxicating liquor, namely, whiskey, to Joseph Cantlin on the 4th of August, 1951. Testimony was taken relative to this charge, but the Board did not make it a subject of its finding and it is only involved in this appeal so far as the evidence taken on this phase of the case may relate to the issues on the other charges.

The main contention of this appellant is that there is no support or, at most, insufficient proof of a sale of beer to Finnerty and Vuytich, the two persons named as the ones to whom it was claimed the sales were made. Supporting the contention, appellant asserts properly that the finding of the Board is that there were **sales** to the named persons in violation of §6064-22 GC which, insofar as applicable, reads:

"Sales of beer and intoxicating liquor under any and all classes of permits authorized by the liquor control act and from state liquor stores, shall be subject to the following restrictions, in addition to those lawfully imposed by the rules, regulations, or orders of the department, to wit: * * *.

"2. No sales shall be made to an intoxicated person."

The citation charges "did sell and furnish" and the finding is that the liquor was "sold and furnished." It will be noted that §6064-22 **GC** does not use the word "furnish" and it is contended that it is essential to the proof of the Board that a sale in the legal acceptation of the

term, namely for a consideration, must appear to support the charge. Inasmuch as the Board found that the liquor was sold and furnished, it follows that it concluded that there was a sale and this conclusion was concurred in by Judge Randall of the Common Pleas Court on review.

We have examined the written opinion of Judge Randall and are in accord with his conclusions that there was evidence from which a sale could be inferred.

The record in this case discloses direct conflict in material matters among the various witnesses. It was essential to the sustaining of the charge that it appear that there was a sale of beer. This is directly denied by Finnerty, Williams, Mondock and Phylis Kirsch, daughter of permittee, who was in charge of the permit premises on the night of June 30, 1951. All of these witnesses say that neither Finnerty nor Vuytich was served with any liquor. Finnerty says he was not drunk but this contention of appellant's is conclusively disproved not only by the testimony of Officers Sweeney and Lower, but by the chemical analyses of the urine taken from Finnerty and Vuytich succeeding their arrest on the night of June 30th at the permit premises.

It is significant that two witnesses for the appellant, Mondock and Williams, say that, although Finnerty and Vuytich were not served with anything, they asked for drinks. It is inferable that if they asked for drinks and did not receive them, the reason must have been because they were intoxicated. It is significant also that Mondock denies that Cantlin was served although Cantlin's son testified specifically that he was served with liquor. A strong case was made on the charge respecting Cantlin with the possible exception that the proof as to the type of intoxicating liquor that was sold. Although Mondock and Mrs. Ellinwood testified that Cantlin was not served with liquor on the night of August 4th, 1951, Cantlin's son testified that they were not at the bar of the permit premises on this night.

We have heretofore discussed some of the testimony on which the witnesses for the appellant were, in our judgment, discredited by the more reliable witnesses.

The one and only close question on this record is whether or not there is any evidence which will support the finding of a **sale** of beer to Finnerty and Vuytich. Upon this narrow question there are circumstances which must be given probative effect, viz., the fact that the permit premises were being operated under license for which heavy fees were paid, that the business was commercial and operated for profit, Finnerty and Vuytich were separated at the bar and were not accompanied by any other person, negativing any inference that any person other than they may have paid for the beer which was in front of them. The permittee was charged with the knowledge that the same section upon which the charges against her were placed, §6064-22 **GC, paragraph** 5, thereof, carried this prohibition:

"No holder of a permit shall give away any beer or intoxicating liquor of any kind or description at any time in connection with his business."

Therefore, if it appear without more, that a bartender serves a single patron with liquor an inference may be drawn that the patron paid for this liquor.

But there is more testimony bearing on the issue of the sale of the beer. Officer Lower testified that he had been in the permit premises at 7:00 p. m. on June 30, 1951; that he saw one, Bokar, who was drunk attempting to purchase a bottle of beer which request was refused; that he came in a second time and that he, Lower, then warned the person in charge, Phyllis Kirsch, against making sales to intoxicated persons; that he then arrested Bokar for intoxication, that he, with Patrolman Sweeney, returned

"to the bar at about 9:00 p. m., observed Finnerty draped over the bar, his mouth open, stuff drooling out of it; his eyes closed; tried to pick up his glass to drink it."

"A short way down the bar was Frank Vuytich, jabbering incoherently about everything and anything. Didn't care whom he addressed his comments to, and he was drinking his beer; that he, Lower, said to Phyllis, who was in charge, 'I warned you at seven o'clock about serving men in this condition. I come back two hours later, and you are still doing it,' and she said, 'Why, they're not drunk.' "

This statement of the officer was a direct charge that she was selling or serving liquor to these two intoxicated men to which she made no denial. Officer Lower further testified in answer to this question,

"Did you observe who was waiting on Frank Vuytich in the bar that evening?"

Answer:

"Well, it was Phyllis Kirsch. Phyllis Kirsch was working behind the bar, and part of the time she would come outside of the bar. Of course she came outside the bar and had a conversation with me and Louis Johnson, and Louis admitted serving him. I asked who gave him the beer, and he said: 'I did.' "

If it be conceded that the statement attributed to Johnson, if made, is merely hearsay, it was given in the presence of the person who was in charge of the permit premises. This testimony was admitted without objection. In this situation, if hearsay, it has a certain probative value. Officer Lower says that Johnson admitted serving Vuytich; that he said he gave him beer. Officer Sweeney testified that Finnerty had a partly consumed bottle of beer in front of him and that Vuytich had a partly consumed bottle of beer in front of him at the time of the occurrences in question. Upon all of the foregoing testimony and the circumstances appearing, the record affords support for the charge that there was a sale of beer to Finnerty and Vuytich.

In the testimony of Officer Lower, in answer to the question whether there was anything else in the conversation with Phyllis Kirsch, he said:

"Well, she wanted to know why I was picking on her. Well, I told her it was still a standing complaint we had."

Objection was made to the use of "standing complaint," which was sustained. This is the sole reference to any standing complaint against the permit premises.

At the hearing in Common Pleas Court additional testimony was taken which related solely to the question whether or not there had been a standing complaint at Police Headquarters against the permit premises, the testimony concerning which had been stricken from the

record. In other words, there was nothing which the additional testimony could rebut.

We readily concede, as did Judge Randall, that there is serious conflict in the testimony. Some of the witnesses manifestly are lying. It was the obligation of the Board and later of Judge Randall to weigh this testimony. There is reliable, probative and substantial support for all of the material elements in the charges found to be proven granting to the Board and the Common Pleas Judge their right to weigh and determine the credibility of the witnesses, nor is the judgment against the weight of the evidence.

The judgment will be affirmed.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.